# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

KELLEY ROBERT STOCKTON,

       Plaintiff,

v.                                           Case No:  6:20-cv-1249-LRH

COMMISSIONER OF SOCIAL
SECURITY

       Defendant.

_____

## MEMORANDUM OF DECISION[1]

      Kelley Robert Stockton ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits.  Doc. No. 1.  Claimant raises two arguments challenging the Commissioner's final decision, and, based on those arguments, requests that the matter be reversed and remanded for further administrative proceedings.  Doc. No. 22, at 26, 41, 51.  The Commissioner asserts that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and that the final decision of the Commissioner should be affirmed.  *Id.*

_____

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.  *See* Doc. Nos. 15, 19–20.

at 51.   For the reasons stated herein, the Commissioner's final decision is **AFFIRMED**.

## I.   PROCEDURAL HISTORY.

On May 18, 2016, Claimant filed an application for disability insurance benefits, alleging a disability onset date of January 1, 2014.   R. 31, 124.[2]   Claimant's application was denied initially and on reconsideration, and he requested a hearing before an ALJ.   R. 146–48, 151–55, 157–61.   Hearings were held before the ALJ on February 4, 2019 and June 17, 2019, during which Claimant was represented by an attorney.   R. 52–90.   Claimant testified at the first hearing, and Claimant, a medical expert, and a vocational expert ("VE") testified at the second hearing.   *Id.*

After the hearing, the ALJ issued an unfavorable decision finding that Claimant was not disabled.   R. 31–45.   Claimant sought review of the ALJ's decision by the Appeals Council.   R. 256–58, 376–81.   On May 18, 2020, the Appeals Council denied the request for review.   R. 1–6.   Claimant now seeks review of the final decision of the Commissioner by this Court.   Doc. No. 1.

---

[2] Claimant filed a previous application for disability insurance benefits on February 8, 2011, which was denied.   *See* R. 91–98.   That previous application is not at issue in this appeal.

## II.    THE ALJ'S DECISION.[3]

After careful consideration of the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. § 404.1520(a).   R. 31–45.[4]    The ALJ found that Claimant last met the insured status requirements of the Social Security Act on December 31, 2016.   R. 33.   The ALJ also found that Claimant had not engaged in substantial gainful activity during the period from his alleged onset date of January 1, 2014, through his date last insured.   *Id.*   The ALJ concluded that, through the date last insured, Claimant suffered from the following severe impairments:   degenerative disc disease of the lumbar and cervical portions of the spine, and osteoarthritis of the left knee status post arthroscopic surgery.   *Id.*[5]

---

[3] Upon a review of the record, counsel for the parties have adequately stated the pertinent facts of record in the Joint Memorandum.   Doc. No. 22.   Accordingly, the Court adopts those facts included in the body of the Joint Memorandum by reference without restating them in entirety herein.

[4] An individual claiming Social Security disability benefits must prove that he or she is disabled.   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled:   (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ('RFC') assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience."   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(i)–(v), 416.920(a)(i)–(v)).

[5] The ALJ found that Claimant's ADHD and various psychiatric diagnoses in the

The ALJ concluded that Claimant did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.   R. 37–38.

Based on a review of the record, the ALJ found that Claimant had the residual functional capacity ("RFC"), through the date last insured, to perform light work as defined in the Social Security regulations,[6] except:

> [H]e was limited from lifting/carrying more than 10 pounds occasionally and less than 10 pounds frequently.   He remained able to stand/walk 4 hours total in an 8-hour day.   He was able to sit for at least 6 hours of an 8-hour day.   He would not need to be off task to shift positions every hour.   He needed to avoid climbing of ladders, ropes, and scaffolds, but he was frequently able to climb ramps and stairs.   He should avoid dangerous machinery and avoid concentrated exposure to vibrations.   He should not kneel or crawl. He can frequently stoop and crouch.

R. 39.

_____

record were not severe impairments.   *See* R. 34–37.

[6] The social security regulations define light work to include:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After considering the record evidence, Claimant's RFC, and the testimony of the VE, the ALJ found that, through the date last insured, Claimant was capable of performing past relevant work as a web site developer/computer programmer, finding that such work did not require the performance of work-related activities precluded by Claimant's RFC.   R. 44–45.   Accordingly, the ALJ concluded that Claimant was not disabled at any time from January 1, 2014 (the alleged onset date) through December 31, 2016 (the date last insured).   R. 45.

## III.    THE APPEALS COUNCIL.

Claimant requested review of the ALJ's decision by the Appeals Council.   R. 256–57, 376–81.   Claimant submitted to the Appeals Council a Physical Restrictions Evaluation form completed by Gary Weiss, M.D., Claimant's treating neurologist, as well as medical records from Dr. Weiss from October 1, 2019 through October 17, 2019, all of which were not before the ALJ.   R. 8–12, 19–27.

On May 18, 2020, the Appeals Council denied the request for review, stating, in pertinent part as follows:

> You submitted medical evidence from Gary Weiss, M.D., dated October 1, 2019 through October 17, 2019 (9 pages) and an opinion from Gary Weiss, M.D., dated October 23, 2019 (7 pages).   The Administrative Law Judge decided your case through December 31, 2016.   This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before December 31, 2016.

R. 2.    This appeal follows.

## IV.    STANDARD OF REVIEW.

Because Claimant has exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).   The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).   The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence.   *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## V.      ANALYSIS.

In the Joint Memorandum, which the Court has reviewed, Claimant raises two assignments of error:   (1) the ALJ erred in his consideration of the medical opinions of record, in particular those of Dr. Jay Olsson, D.O., Claimant's treating pain management specialist; and (2) the Appeals Council erred in improperly rejecting new and material evidence submitted, in the form of treatment notes and opinions from treating neurologist, Dr. Gary Weiss, M.D.   Doc. No. 22. Accordingly, these are the only issues that the Court will address.

### A.      Dr. Olsson.

An individual claiming Social Security disability benefits must prove that he or she is disabled.   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   At the fourth step of the sequential evaluation process, the ALJ must determine Claimant's RFC.   *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).   "[T]he regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments," which includes consideration of "all the relevant medical and other evidence in the case."   *Id.* (citations and quotations omitted).

In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the medical opinions of treating, examining, and non-examining medical sources.   *See* 20 C.F.R. § 404.1545(a)(3).   The ALJ must consider a number of factors

when weighing medical opinions, including: (1) whether the physician examined the claimant; (2) the length, nature, and extent of the physician's relationship with the claimant; (3) the medical evidence supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. *Id.* § 404.1527(c).[7]

A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown to the contrary. *See id.* § 404.1527(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence). The ALJ must state the weight assigned to each medical opinion, and articulate the reasons supporting the weight assigned. *Winschel*, 631 F.3d at 1179. The failure to state the weight with particularity or articulate the reasons in support of the assigned weight may prevent the Court from determining whether the ALJ's ultimate decision is rational and supported by substantial evidence. *Id.*

As discussed above, Claimant's first assignment of error concerns the ALJ's consideration of the opinions of Dr. Olsson, Claimant's treating pain management specialist. Doc. No. 22, at 26–34. On January 25, 2019, Dr. Olsson completed a

---

[7] Although the SSA regulations have been amended effective March 27, 2017, the new regulations apply only to applications filed on or after that date. *See* 20 C.F.R. §§ 404.1520c, 416.920c. Because Claimant filed his application prior to March 27, 2017, the rules in 20 C.F.R. § 404.1527 govern here.

Medical Questionnaire.   Doc. No. 755–57.   Dr. Olsson opined that since April 15, 2011, Claimant could lift or carry a maximum of twenty (20) pounds occasionally and that Claimant could stand/walk only 2 hours per 8-hour workday, citing an MRI demonstrating degenerative changes at L4-5, decreased strength in the right hip flexors, and stenosis.   R. 755.   Dr. Olsson further opined that Claimant could sit only approximately 5 hours in an 8-hour workday, relying on the MRI findings, as well as physical findings on examination and EMG findings.   R. 756.   Dr. Olsson also opined that Claimant could never climb, balance, kneel, or crawl, and that he could only occasionally stoop and crouch, and that Claimant had limitations in pushing, pulling, twisting, and bending.   R. 756.   Dr. Olsson further opined that Claimant's impairments and treatment would cause him to be absent from work four or more days per month, again citing MRI and EMG findings in support.   *Id.*

In the decision, the ALJ discussed Dr. Olsson's medical records relevant to the period at issue regarding Claimant's back, knee, neck, shoulder, and bilateral foot pain.   R. 40, 41–42.   As it relates to Dr. Olsson's opinions on the Medical Questionnaire, the ALJ stated as follows:

> On January 25, 2019, Jay Olsson, DO filled out a form on behalf of the claimant (Exhibit B25F).   He noted that the claimant could lift 20 pounds occasionally (Id at 1 ). The claimant had no impairment for reaching, handling, feeling [fingering was left off the form] (Id at 2). Dr. Olsson relied upon EMG findings. There are none within the record.   His checks and comments are not support be his own notes. As noted above, he observed the claimant to present with full strength, no pain on palpation, no muscle spasm, and reported negative straight

leg raise testing (Exhibit B11F/3, 8, 21, 35, 40; Exhibit Bl2F/3; Exhibit B21F/38).   While he noted an unsteady gait, he consistently observed the claimant to pace about the examination room.   Dr. Olsson did not document complaints of severe pain.   Rather, he noted mild to moderate symptoms that waxed and waned at approximately 3-4/10 over the years.   His opinions are not supported by the normal examination findings of other providers, nor the testimony of Dr. Lorber.   Accordingly, the undersigned gives this form little weight.

R. 43.

Thus, the ALJ gave Dr. Olsson's opinions little weight for the following reasons: (1) Dr. Olsson relied on EMG findings that were not in the record; (2) Dr. Olsson's opinions were not supported by/inconsistent with his own treatment notes; and (3) Dr. Olsson's opinions were not supported by the normal examination findings of other providers nor Dr. Lorber's testimony.   *Id.*

In the Joint Memorandum, Claimant argues that the ALJ erred in giving little weight to Dr. Olsson's opinions as unsupported by his treatment notes because, according to Claimant, the ALJ misstated the facts.   Doc. No. 22, at 28–29.   In particular, the ALJ stated that Dr. Olsson relied on EMG findings, but then incorrectly stated that there were "none within the record," as several test results in the record demonstrate.   *Id.* at 29 (citing R. 43, 694–95, 712).   According to Claimant, the ALJ also arbitrarily pointed to several normal findings in Dr. Olsson's treatment notes, while failing to consider abnormal findings reflected therein.   *Id.*

at 29–31. [8]   And although the ALJ states that Dr. Olsson's opinions are not supported by normal examination findings of other providers, the ALJ never specifies what other normal examination findings he means.  *Id.* at 31.  Finally, Claimant contends that the ALJ erred in giving little weight to Dr. Olsson's opinions by crediting the opinions of the non-examining medical expert Dr. Lorber, *id.* at 31–32, and those of two state agency non-examining psychologists, *id.* at 33.

The Commissioner, on the other hand, contends that the ALJ gave good cause reasons supported by substantial evidence for giving Dr. Olsson's opinions little weight.  *Id.* at 34–40.  The Commissioner concedes that the ALJ erred in stating that there were no EMG findings in the record, as the record contains EMG testing and findings by Dr. Olsson (R. 693–95, 712–21), but, according to the Commissioner, "the ALJ's oversight is harmless because the ALJ did not rely solely on that reason for giving Dr. Olsson's opinion little weight."  *Id.* at 37.  Moreover, according to the Commissioner, because the ALJ gave good cause reasons for giving little weight

---

[8] For example, Claimant cites MRI findings showing degenerative changes at L4-5, a clinical exam finding decreased strength in the right hip flexors, and stenosis (R. 755); antalgic unsteady gait, decreased range of motion in the neck and back, decreased muscle strength in the right hip flexors, flattened lumbar curve, hip height discrepancy, hypoesthesia along the right L5 nerve to the medial foot and great toe, positive Romberg (showing a balance disorder), and psychomotor agitation (Tr. 672, 790); and a November 2, 2017 lumbar MRI revealing: (1) straightened lumbar lordosis; (2) multilevel multifactorial degenerative changes most significantly impact L3-4 where there are findings of central, lateral recess and bilateral neural foraminal stenosis; (3) appearance of some residual lateral recess and foraminal stenosis on the left side at L4-5 as well as L5-S1; and (4) some epidural fibrosis noted posterior to the L5 vertebral body.  Doc. No. 22, at 30–31.

to Dr. Olsson's opinions, the ALJ was free to give greater weight to the opinions of state agency consultants.   *Id.* at 40–41.

Upon consideration, the Commissioner has the better argument based on the facts of this case because the ALJ provided at least two good cause reasons, supported by substantial evidence, for giving Dr. Olsson's opinions only little weight, providing a sufficient basis to affirm the ALJ's decision.   *See D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. App'x 944, 948 (11th Cir. 2010) (finding no reversible error in consideration of opinion of treating physician where "ALJ articulated at least one specific reason for disregarding the opinion and the record support[ed] it.").[9]

As an initial matter, the Court agrees with Claimant, and the Commissioner properly concedes, that the ALJ's first reason for discounting Dr. Olsson's opinions is not supported by substantial evidence because the ALJ erred in finding that the record contains no EMG findings, a finding that the record clearly contradicts.   *See* Doc. No. 22, at 37; R. 693–95, 712–21.   But, an ALJ's misstatement of fact can be harmless if it does not affect the ALJ's ultimate decision.   *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983).   And a single erroneous statement by the ALJ alone may not require remand.   *See Rhodes v. Astru*e, No. 8:07-cv-18-T-MAP, 2008 WL

---

[9] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36–2.

360823 at *3 (M.D. Fla. Feb. 8, 2008) (noting that a single erroneous statement by an ALJ alone does not require remand where the ALJ's finding otherwise has strong support).

As discussed below, because the ALJ provided two other good cause reasons for giving Dr. Olsson's opinions little weight, the Court finds any error in the ALJ's statement regarding no EMG findings in the record harmless on the facts of this case.  *See Buffington v. Comm'r of Soc. Sec.*, No. 6:11-cv-1114-Orl-22GJK, 2012 WL 3715221, at *14 (M.D. Fla. July 26, 2012), *report and recommendation adopted*,  2012 WL 3715107 (M.D. Fla. Aug. 28, 2012) (misstatement of fact was harmless error where the ALJ applied the correct legal standards in giving little weight to a medical opinion, including that the physician's opinion conflicted with his own medical records, a finding which was supported by substantial evidence); *Moorer v. Astrue*, No. 3:06CV434/LAC/EMT, 2007 WL 4336080, at *13 (N.D. Fla. Dec. 7, 2007) (finding misstatement by ALJ harmless error because his other reasons for discounting the medical opinion at issue were supported by substantial evidence).  *See also Cascio v. Comm'r of Soc. Sec.*, No. 2:15-cv-719-FtM-CM, 2016 WL 7486745, at *9 (M.D. Fla. Dec. 30, 2016) (affirming where the ALJ erroneously stated higher global assessment of function (GAF) scores than were in the record; finding that the misstatement was at most harmless error because substantial evidence otherwise supported the ALJ's determination); *Wright v. Colvin*, No. CV 313-079, 2014 WL 5591058, at *7 (S.D. Ga.

Nov. 3, 2014) (misstatements in credibility determination were harmless where the ALJ provided six different reasons to support the adverse credibility determination, and thus, the ALJ had a sufficient basis for the credibility determination even absent the misstatements).

Specifically, the ALJ gave little weight to Dr. Olsson's opinions, in part, because the opinions failed to find support in Dr. Olsson's own treatment notes. *See* R. 43.   The ALJ first stated that Dr. Olsson observed Claimant to present with full strength, no pain on palpation, no muscle spasm, and reported negative straight leg raise testing.   *See id.* (citing Exhibit B11F/3, 8, 21, 35, 40; Exhibit Bl2F/3; Exhibit B21F/38).   The record supports those findings.   *See* R. 550, 555, 568, 582, 587 (Exhibits B11F, B12F, and B21F demonstrating 5/5 strength, no pain on palpation, no palpable muscle spasm, and negative straight leg raise tests).   And the ALJ also correctly noted that although Dr. Olsson noted Claimant's unsteady gait, Dr. Olsson's treatment notes consistently reflect that Dr. Olsson observed Claimant pacing the examination room.   *See id.*   Moreover, as the ALJ stated, Dr. Olsson did not document complaints of severe pain; instead, his records demonstrate mild to moderate symptoms ranging on a pain index from 3–4 out of 10.   *See, e.g.*, R. 550, 555, 559, 563, 568, 572, 577, 582, 587, 591.

In the Joint Memorandum, Claimant suggests that the ALJ ignored abnormal clinical findings citing several examination findings in support, as set forth above.

Doc. No. 22, at 30–31.   Claimant's argument misses the mark however, because, as the Commissioner argues, *see* Doc. No. 22, at 39–40, Claimant essentially invites the Court to reweigh the evidence, which is not within the province of this Court.   *See Bloodsworth*, 703 F.2d at 1239; *Borges v. Comm'r of Soc. Sec.*, 771 F. App'x 878, 882 (11th Cir. 2019) ("To the extent that Borges points to other evidence that would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of this Court's appellate review, which precludes it from re-weighing the evidence or substituting its own judgment for that of the Commissioner.").   And to the extent that the ALJ did not specifically discuss in the decision all of the records cited by Claimant, "the ALJ [is not required] to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow [the Court] to conclude that the ALJ considered the claimant's medical condition as a whole."   *See Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). The ALJ's decision in this case satisfies that standard.

The ALJ's third reason for giving little weight to Dr. Olsson's opinions—that Dr. Olsson's opinions were not supported by the normal examination findings of other providers nor Dr. Lorber's testimony—is also supported by substantial evidence.   In this regard, Claimant first argues that "the ALJ never specifies what normal findings of other providers were inconsistent with Dr. Olsson's opinions."

Doc. No. 22, at 31.   The Court disagrees.   Throughout the decision, the ALJ discusses the normal examination findings by several providers in determining Claimant's RFC.   *See* R. 40, 41, 44 (discussing normal findings by Dr. Chhindra, Dr. Lester, PA Klucar, and Dr. Lester).   Claimant's argument to the contrary is unavailing.

Claimant also argues that "the ALJ has the law backwards" with regard to giving Dr. Olsson's opinions little weight because they conflict with the testimony of non-examining medical expert Dr. Lorber.   Doc. No. 22, at 31–32.   In essence, Claimant contends that Dr. Olsson's opinions were entitled to more weight than the opinions of Dr. Lorber because Dr. Olsson was a treating physician.   *See id.* at 31–34.   However, "[m]edical experts are highly qualified and their opinions may be entitled to great weight."   *Henderson v. Saul*, No. 8:19-CV-2454-T-AEP, 2021 WL 1138181, at *4 (M.D. Fla. Mar. 25, 2021) (citing 20 C.F.R. § 404.1527(c); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159–60 (11th Cir. 2004)).   Given that the ALJ considered Dr. Lorber's opinion and found it well supported (as opposed to the opinions of Dr. Olsson, which the ALJ determined were entitled to little weight), the Court finds no reversible error.[10]   *See id.* (finding no error in ALJ discounting

---

[10] In a footnote, Claimant contends that Dr. Lorber lacks current medical knowledge, was "clearly unprepared," and wrongfully discredited Dr. Olsson.   Doc. No. 22, at 31 n.3.   To the extent that Claimant intended to assert this as an independent argument, given the perfunctory nature thereof and Claimant's failure to cite any legal authority in support, the Court finds the argument waived.   *See generally N.L.R.B. v.*

treating physician's opinions and giving great weight to the opinions of medical expert (citing *Huntley v. Comm'r of Soc. Sec.*, 683 F. App'x 830, 833 (11th Cir. 2017))); *Kinnard v. Astrue*, No. 8:09-cv-628-T-24AEP, 2010 WL 3584583 (M.D. Fla. Aug. 26, 2010), *report and recommendation adopted*, 2010 WL 3584557 (M.D. Fla. Sept. 10, 2010), *aff'd*, 426 F. App'x 835 (11th Cir. 2011) (affirming ALJ decision that gave the most weight to the opinions of medical experts, and little weight to the opinions of treating physicians).

But Claimant also argues that the ALJ erroneously "cites to the opinions of two state agency non-examining psychologist opinions," when "these doctors did not have an opportunity to review most of Dr. Olsson's notes as well as his opinion assigning [Claimant] limitations." Doc. No. 22, at 33. According to Claimant, those opinions cannot constitute substantial evidence to discount Dr. Olsson's opinions. *See id.* Claimant relies on *Johnson v. Barnhart*, 138 F. App'x 266, 270 (11th Cir. 2005) in support. *Id.* at 33–34.

In *Johnson*, an unpublished opinion, the Court found that although the ALJ may have properly rejected the opinions of a treating physician for good cause, the ALJ nevertheless erred in giving greater weight to a non-examining physician. 138

---

*McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."). *See also Yedra Yhon v. Comm'r of Soc. Sec.*, No. 3:09-cv-342-J-32MCR, 2010 WL 3394654, at *3 (M.D. Fla. Aug. 26, 2010) (court would not attempt to decipher content of undeveloped arguments raised by the claimant).

F. App'x at 270.   The ALJ had rejected the opinions of the treating physician for both inconsistency with the physician's own treatment notes, as well as the opinions of the non-examining physicians.   *Id.*   The Court found that standing alone, the opinion of a non-examining physician could not constitute substantial evidence to support the ALJ's determination.   *Id*. at 270–71.   Ultimately, the Court found that on the record as it was, additional evidence was required to make a determination as to whether the claimant was disabled, in particular, it was not clear what level of work, if any, the claimant could perform, and the medical record did not establish the claimant's ability to perform past relevant work.   *Id.*

Upon consideration, the Court finds *Johnson* distinguishable from this case for two primary reasons.   First, from the ALJ's decision here, it is not entirely clear why Claimant assumes that the ALJ even based his assignment of little weight to Dr. Olsson's opinions on the opinions of state agency psychologists, which does not appear to be the case.   *See* R. 43.   Second, the "ultimate reversible error" in *Johnson* was the ALJ's failure to resolve inconsistencies in the record as to whether the claimant could return to past relevant work, which is not at issue here.   *See Robinson v. Berryhill*, No. CV 16-00494-N, 2017 WL 3205060, at *9 (S.D. Ala. July 27, 2017) (distinguishing *Johnson* on similar basis).   *See also Kidd v. Colvin*, No. CV 115-207, 2017 WL 914061, at *8 (S.D. Ga. Feb. 2, 2017), *report and recommendation adopted*, 2017 WL 901896 (S.D. Ga. Mar. 7, 2017) (similar).   So, the Court finds Claimant's

reliance on *Johnson* unpersuasive.

Moreover, as discussed above, Claimant has not established that the ALJ erred in discounting the opinions of Dr. Olsson, and thus the weight given to those opinions was not error.   Further, the ALJ stated in the decision that there were no opinions in the record that were contrary to the opinions of the non-examining state agency psychological consultants, a finding that Claimant does not contest.   *See* R. 43.   In general, the "more consistent a physician's opinion is with the record as a whole, the more weight an ALJ can place on that opinion." *Putman v. Soc. Sec. Admin., Comm'r*, 705 F. App'x 929, 932 (11th Cir. 2017).   Based on the facts of this case, the Court finds no error in the ALJ giving the opinions of the state agency psychological consultants greater weight than that afforded to the opinions of Dr. Olsson, a treating pain management specialist.   *See id.* at 934 (finding that ALJ did not err by giving greater weight to the opinion of a non-examining physician than the opinion of a treating physician where the ALJ articulated reasons independent of the opinions of the non-examining physician for giving treating physician's opinion less than substantial weight (citing 20 C.F.R. § 404.1527(c)(4))); *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 874 (11th Cir. 2011) (concluding that ALJ did not err in giving treating physician's opinion little weight and instead crediting the opinions of the state agency consultants where the ALJ articulated specific reasons for not giving controlling weight to the treating physician's opinion (it was

inconsistent with his own treatment notes, treatment notes of other providers, and the claimant's daily activities), and the opinions of state agency consultants were consistent with the records of the treating physicians).

In sum, where the Commissioner's decision is supported by substantial evidence, the Court must affirm, even if the Court would have reached a contrary result as the finder of fact, and even if the Court finds that the evidence preponderates against the Commissioner's decision.  *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  *See also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion).  Because the decision in this case was supported by substantial evidence, the Court finds Claimant's first assignment of error unpersuasive.

B.   Appeals Council.

"'With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process,' including before the Appeals Council." *Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quoting *Ingram v. Comm'r of Soc., Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007)).  "The Appeals Council will review a case if . . . [it] receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the

outcome of the decision."   20 C.F.R. § 404.970(a)(5).   "When the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision is . . . subject to judicial review."   *Washington*, 806 F.3d at 1320 (quoting *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).

On review, the Court must determine whether the new, material, and chronologically relevant evidence submitted to the Appeals Council renders the denial of benefits erroneous.   *Ingram*, 496 F.3d at 1261–62.[11]   "Evidence is material if 'there is a reasonable possibility that the new evidence would change the administrative outcome.'"   *Atha v. Comm'r of Soc. Sec.*, 616 F. App'x 931, 936 (11th Cir. 2015) (quoting *Hyde v. Bowen*, 653 F.2d 456, 459 (11th Cir. 1987)).   "New evidence is chronologically relevant if it 'relates to the period on or before the date of the [ALJ's] hearing decision.'"   *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018) (quoting 20 C.F.R. §§ 404.970(b), 416.1470(b)).

Here, as discussed above, Claimant submitted to the Appeals Council a Physical Restrictions Evaluation form completed by Gary Weiss, M.D., Claimant's treating neurologist, as well as medical records from Dr. Weiss from October 1, 2019 through October 17, 2019, none of which were before the ALJ.   R. 8–13, 19–27.   The

---

[11] The Court reviews the denial of review by the Appeals Council under sentence four of section 405(g).   *See Ingram*, 496 F.3d at 1262.

Appeals Council denied the request for review, finding that the records and opinions from Dr. Weiss were, in essence, not chronologically relevant.   *See* R. 2.[12]

Claimant argues that the Appeals Council erred in that finding because it "ignored the fact that the form specifically covers the time period beginning December 2, 2014 through October 31, 2019," and that the "retrospective opinion" was supported by a review of medical records during the relevant time period. Doc. No. 22, at 42, 44.   According to Claimant, although Dr. Weiss's treatment notes were from 2019, those records support his opinions.   *Id.* at 43.

As the Commissioner contends in response, however, it is not apparent that the evidence submitted from Dr. Weiss is chronologically relevant.   Specifically, the record demonstrates that Claimant did not present to Dr. Weiss until October 1, 2019, and thus Dr. Weiss was not Claimant's treating physician prior to that date. *See* R. 23.   As noted in the ALJ's decision, the ALJ decided Claimant's case through December 31, 2016, Claimant's date of last insured.   *See* R. 45.   In the Joint Memorandum, Claimant suggests that Dr. Weiss's opinion is retrospective because the cover letter and introduction to the form requested that Dr. Weiss review certain medical records from 2014 through 2019.   *See* R. 8–9.   But, nothing on the portion

---

[12] Here, there is no dispute that the evidence submitted to the Appeals Counsel was "new evidence" because it did not exist prior to the date of the ALJ's decision.   Instead, the dispute centers on whether the information was both chronologically relevant and material, and thus, whether it was likely to change the administrative outcome.

of the form completed by Dr. Weiss states that said records were considered in his assessment, or that his opinions related to any particular time period.   *See* R. 9–13. Moreover, Dr. Weiss does not point to any specific treatment notes or tests during the relevant period in the Physical Restrictions Evaluation form.   *See id.*

Accordingly, upon review of the record, Claimant has not demonstrated that the Physical Restrictions Evaluation form is chronologically relevant.   *See, e.g., Griffin v. Soc. Sec. Admin., Comm'r*, 842 F. App'x 339, 342 (11th Cir. 2021) (finding Appeals Council did not err in declining to consider newly submitted health statement, in part, because the physician did not cite to any medical evidence to support the physician's conclusions that the limitations existed during the relevant period, and did not provide any reference to medical records from the relevant time period to support the conclusion that the limitations applied during the relevant period); *Stone v. Soc. Sec. Admin.*, 658 F. App'x 551, 553 (11th Cir. 2016) (finding that the claimant had failed to demonstrate that new evidence submitted to Appeals Council was chronologically relevant because the "summarized records include no express reference to [the claimant's] condition or symptoms before the ALJ's decision," and there was no evidence that the provider of the diagnosis "reviewed or relied upon [the claimant's] past medical records in making that diagnosis").

Claimant also argues that the form "specifically covers the time period beginning <u>December 2, 2014</u> . . . ."   Doc. No. 22, at 41.   But, again, although the

introduction to the form requests that Dr. Weiss consider the time period "beginning 12/2/14 through the present date," in the portion of the form completed by Dr. Weiss (which was completed on October 31, 2019), Dr. Weiss never states that the opined-to limitations relate to any particular period, and the records submitted from Dr. Weiss himself are all from 2019, far outside the relevant time period.   *See* R. 9–13, 19–27.   And although not cited by Claimant, the Court finds the analysis set forth in *Snyder v. Commissioner of Social Security*, No. 6:20-cv-1275-DCI, 2021 WL 3190559 (M.D. Fla. July 28, 2021) persuasive on this point.[13]

In *Snyder*, the claimant submitted to the Appeals Council records from Dr. Weiss post-dating the ALJ's decision.   *Id.* at *5.   The claimant argued, in part, that the Appeals Council erred in finding the new evidence not chronologically relevant because the form completed by Dr. Weiss stated that it applied retrospectively, and the responses were made after reviewing medical records from the time period relevant to the claimant's disability claim.   *Id.*   The Court found:

> On its face, the Physical Restrictions Evaluation and MRI result were concluded months after the period of disability.   While the form states that it applies to March 27, 2017 through the present, there is no discussion in the record that explains how these results actually relate back to a prior date.   The evidence does not explore whether, at an earlier time, the pain was better or worse or more limiting in a way that might have impacted the ALJ's assessment.   As such, the Court agrees with the Appeals Council that the evidence is not chronologically relevant.

---

[13]  The Court notes that *Snyder* was decided after the parties' submission of the Joint Memorandum in this case.

*Id.* at *6 (record citations omitted).     As discussed above, the Court finds that Claimant has not established the chronological relevance of Dr. Weiss's records and opinions for the same reasons.   *See id.*   *See also Brewster v. Comm'r of Soc. Sec.*, No. 6:18-cv-1220-Orl-TBS, 2019 WL 13055069, at *9 (M.D. Fla. June 19, 2019). [14] Consequently, "[b]ecause the new evidence was not chronologically relevant, the

---

[14] Although the Court finds the analysis in *Snyder* persuasive to the outcome here, the Court further notes at least two factually similar recent decisions addressing records from Dr. Weiss, submitted by the claimant's counsel to the Appeals Council.   *See McClurg v. Saul*, No. 6:19-cv-1798-Orl-JRK, 2020 WL 5742980 (M.D. Fla. Sept. 25, 2020); *Ripson v. Comm'r of Soc. Sec.*, No. 6:16-cv-1932-Orl-MRM, 2018 WL 1181595 (M.D. Fla. Mar. 7, 2018) Upon consideration, the Court finds those decisions inapplicable.   In *McClurg*, it was "clear" that Dr. Weiss reviewed records during the relevant period and that Dr. Weiss opined to limitations present during the relevant period of disability, and Dr. Weiss's opinions were "accompanied by detailed supporting clinical findings," *see McClurg*, 2020 WL 5742980, at * 6, all of which the Court finds absent in this case, rendering *McClurg* factually distinguishable.   In *Ripson*, on the other hand, the court determined that merely because Dr. Weiss's post-decision treatment notes included symptoms that the claimant had reported to a different medical professional during the relevant period of disability, the treatment notes were chronologically relevant.   *See Ripson*, 2018 WL 1181595, at *6. Without further information regarding the claimant's allegations in *Ripson*, or citation to any legal authority for the proposition that *Ripson* sets forth the appropriate standard in this District, the Court declines to find that *Ripson* dictates the outcome here.

Notably, in the Joint Memorandum, Claimant suggests that Dr. Weiss found that Claimant's condition had worsened since a laminectomy in July 2017.   *See* R. 22, at 42 & n.7.   To that extent, it is not clear what records Claimant is referencing because his citations do not relate to Dr. Weiss's records, but instead, the ALJ's decision.   *See id.*   But, even accepting Claimant's statements as true, as explained in *McClurg*, if the evidence indeed demonstrated a worsening of Claimant's relevant symptoms after the ALJ's decision, it would render the newly submitted medical records not chronologically relevant.   *See McClurg*, 2020 WL 5742980, at *4 (discussing *Stone v. Soc. Sec. Admin.*, 658 F. App'x 551, 553 (11th Cir. 2016), and *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309–10 (11th Cir. 2018)).

Appeals Council was not required to consider it."  *Hargress*, 883 F.3d at 1310.   For these reasons, Claimant has not demonstrated reversible error in the Appeals Council's decision to deny his claim for review based on new evidence.[15]

## VI.   CONCLUSION.

Based on the foregoing, it is **ORDERED** that:

1.    The final decision of the Commissioner is **AFFIRMED**.

2.    The Clerk of Court is **DIRECTED** to enter judgment in favor of the Commissioner and **CLOSE** the case.

**DONE** and **ORDERED** in Orlando, Florida on February 24, 2022.

_____
LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[15] Even assuming that the records submitted to the Appeals Council are chronologically relevant, the Court alternatively finds that Claimant has not demonstrated that a reasonable probability exists that the new evidence would change the administrative outcome.  *See Snyder*, 2021 WL 3190559, at *6 (finding same under similar circumstances because the claimant made "no adequate attempt to demonstrate that the evidence is likely to change the decision . . .").  *See also Griffin*, 842 F. App'x at 342 (new evidence was not material where, in part, it "was the same record evidence already considered by the ALJ and used to determine" that Claimant was not disabled).